Standard Industries, Inc., and Massachusetts Plate Glass Insurance Co., et al., Plaintiffs-Appellants, v. Hemon Thompson, John J. Guinta, Pershing Road Building Corp., and Chicago Title & Trust Co., as Trustee, and Chicago Society of New Jerusalem, Defendants-Appellees.

Gen. No. 47,416.

First District, Second Division.

July 3, 1958.

Rehearing denied September 18, 1958.

Released for publication September 18, 1958.

Barry M. Synchef, and Richard G. Kahn, of Chicago, for appellants.

Heineke, Conklin & Schrader, of Chicago (John C. Healy, of counsel) for defendants-appellees.

JUSTICE KILEY delivered the opinion of the court. This is an action by insurance companies to recover as damages, by virtue of the Dramshop Act (Ill. Rev. Stat. 1955, chap. 43), the amount of monies paid by them for "injury" to the property of their assureds. It is alleged that the damage was caused by the negligence and wilful and wanton conduct of the driver of

an automobile who was intoxicated and to whose intoxication defendant, Guinta, tavern operator, contributed. Defendants' motion to dismiss was sustained and plaintiff-insurers have appealed.

■ The well pleaded facts are admitted by the motion. Defendant, Hemon Thompson, on February 18, 1956, while intoxicated lost control of his automobile and "crashed" into a Chicago building occupied by the assureds. The building as well as merchandise was damaged and the insurers paid the losses. Thompson's intoxication was caused "in whole or in part" by Guinta, operator of "Tuxedo Liquors," and lessee of owner-defendant Society, with the latter's knowledge of the tavern use.

The question is whether the complaint states a cause of action.

Defendants rely upon Economy Auto Ins. Co. v. Brown, 334 Ill. App. 579, and New Amsterdam Casualty Co. v. Gerin, 9 Ill.App.2d 545, to sustain the trial court's decision. They contend that the insurers are not persons entitled to sue under the Dramshop Act. The insurers depend upon a 1955 amendment to the Act as including them as persons entitled to maintain the cause of action. Defendants admit this case should be decided under the 1955 amendment.

The basis for the court's disqualification of the insurer in the New Amsterdam case as a person was the doctrine of ejusdem generis. That doctrine no longer applies to the Act since the specific classes of persons enumerated in the Act in 1949 have been replaced by the term "every person" in the 1955 amendment. The court in the Economy case disqualified the insurance company on the grounds that to permit it to recover would produce a "flood of spurious litigation," permit it to shift its business risks to the dramshop keepers and pervert the purpose of the statute to deal with the

321

liquor trade as an evil. The doctrine of ejusdem generis was not mentioned.

Defendants argue for a strict construction of the Act. In Howlett v. Doglio, 402 Ill. 311, the court said at page 318, "although the Dram Shop Act is penal in character and should be strictly construed . . . the legislation is, at the same time, remedial and should be so construed as to suppress the mischief and advance the remedy." This court has said that the Act is "highly penal" and that while we should "faithfully seek to apply the remedy" given in the Act in order to serve its purpose we "cannot enlarge" its scope "beyond a reasonable interpretation of its language." Robertson v. White, 11 Ill.App.2d 177, 186.

The words of the Act give rise to some doubt as to its intention: "Every person . . . shall have a right of action in his or her own name . . ."; and later in speaking of "in consequence" actions: "such action shall be brought by and in the name of the person injured or the personal representative of the deceased person." These provisions are urged by defendants to preclude the insurers from qualifying as persons entitled to sue.

██ The property directly injured "by" the intoxicated person in this case was that of two individuals and two corporations; two natural persons and two artificial persons. The legislature could not in justice intend that corporations who owned property injured by an intoxicated person should have no cause of action under the Act while individuals owning property so injured should have a cause of action. There could be no reasonable basis for this distinction so long as corporations are legally able to own property. We think that the term "every person" includes corporate, artificial persons. Since this is so, we are impelled to the conclusion that in the absence of an express ex-

clusion, insurance corporations are included within the term.

We have decided the insurers are persons under the Act. They could sue had their property been injured and it is admitted that the property of the innocent assureds has been injured "by" an intoxicated person to whose intoxication defendant Guinta contributed in whole or in part. The question now is whether the insurers can sue in assureds' names under admittedly valid claims to which the insurers were subrogated by the terms of the insurance policies.

Defendants contend that no tangible property of the insurers was injured "by" the intoxication and point out that "in consequence" actions are under the 1955 amendment limited to "injuries to means of support." They cite Eager v. Nathan, 14 Ill.App.2d 418, in support of their contention. That is an "in consequence" case. The instant case is not an "in consequence action," but is an action by the insurers in the name of their assureds whose property was injured "by" an intoxicated person. There is no question here of proximate cause as there was in Eager v. Nathan, where the court held that the insurance contract and not the injury to property was the proximate cause of the insurers' injury.

It is true, as defendants argue, that "the general assembly did not see fit to include within the provisions of section 14 of the Dram Shop Act a remedy for pecuniary injuries." Howlett v. Doglio, 402 Ill. 311, 315. The plaintiff in Eager v. Nathan sued, "for reimbursal to his workmen's compensation insurance carrier." The court held that pecuniary losses of the insurer were not "property" under the Act. But the theory of the instant suit is not a recovery of pecuniary injuries. The measure of damages sought, in the name of the insurers, is the amount of money the insurers paid

323

under their insurance contract obligations, but the basis of the suit is not that contract. The basis of the suit is the claims of the assureds, namely, the injury to property "by" the intoxicated Thompson. The subrogation of the insurers to the claims of the assureds did not transform that basis.

▇▇ We think that the insurers can sue on the claims in a "by" action in the names of the assureds. Under the subrogation doctrine an insurer may sue third party tort feasors in the name of its assured whose damages have been covered and paid. The doctrine has been expanded to prevent injustices which would arise in new situations where one party has underwritten the damages or losses of another and the former would be unable to recover its damage or loss payments from the third party causing the damage or loss. In Geneva Const. Co. v. Martin Transfer & Storage Co., 4 Ill.2d 273, 283, the court said the legal concept of subrogation "originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoer. (Citations omitted.) The Illinois courts have recognized the broad purview of this doctrine." Also in Smith v. Clavey Ravinia Nurseries, Inc., 329 Ill. App. 548, 552–553, it was stated that "the doctrine of subrogation has been steadily expanding and is a favorite of the law"; and "in Corpus Juris 706, and the cases cited in support thereof, it is further stated: 'It (subrogation) is no longer confined to cases of suretyship, but the doctrine has been steadily growing

and expanding in importance and becoming more general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they arise.' " Here defendants are rendered liable by the Dramshop Act, without regard to negligence, since the operator's selling or giving liquors has contributed to the intoxication of the person causing the damage. The tavern operator, if he sells one drink to a sober person, "will be liable with the operator who sells most of the drinks, or the last drink." 51 Northwestern Univ. L. Rev. 778 (1957).

In the Economy case the court, page 588, seemingly with approval, pointed out that the Supreme Court of Connecticut in Connecticut Mut. Life Ins. Co. v. New York & N. H. R. Co., 25 Conn. 265, said that "cases in which insurers have been permitted to recover against the party injuring the policyholder, under the doctrine of subrogation, are not in contravention to its determination that the insurer's loss is the remote rather than the proximate cause of the negligence." The Illinois Appellate Court then said "the theory of the subrogation cases is predicated on the equitable doctrine that one who has indemnified another in pursuance of his obligation to do so, is entitled to the means of redress held by the party indemnified against the individual causing the loss. It is a right exercised by the insurer as successor to the remedies of the person indemnified, rather than in its own right."

The Economy and New Amsterdam cases are distinguishable on the ground that in each of those cases the assureds were not innocent persons entitled to sue and had, therefore, no right of action to which the insurers could be subrogated. Defendants' liability here to the assureds is unquestioned, and we think in the absence of legislative prohibition against assureds' subrogation of insurers to their claims, the insurers stand in the shoes of their assureds.

325

█ The court in the Economy case thought that the purposes of the Act would be frustrated should insurers be allowed to pass this business risk on to dramshop keepers and owners. The Dramshop Act was intended to regulate and control a social evil. Its purpose is to discipline "a legal but ill-favored trade." Roberston v. White, 11 Ill.App.2d 177, 185. The means it imposed to discipline the trade was the provision of penalties against dramshop operators contributing to intoxication by selling or giving liquors and also against the owner of the tavern premises. An operator knew the risk, under the Act, of contributing in whole or in part to the intoxication of another. An owner of tavern premises knew the risk of carelessness in the selection of tenants engaged in the trade. Originally the Act operated directly upon the operator and owner at the suit of those injured in person or property by or as a result of the intoxication of another. All this has been changed practically. Normally the party injured is insured and the operator and owner are insured. The real parties in litigation are the insurers.

The original concept of discipline applied on the operator and owner directly by the Act has given way to an indirect discipline. An operator who has been, or may probably be, indiscriminate in selling liquor and an owner, careless about leasing his premises for tavern use, are poor insurance risks and without insurance the risks of the liquor trade under the Act are too great. Thus the fear of losing insurance or failing to obtain insurance is a substantial motive for careful operation and leasing.

These facts known to us have surely been known to the legislature. It has not seen fit to expressly exclude insurance carriers from the benefits of subrogation to valid claims of innocent assureds under the Dram-

326

shop Act. We cannot agree that permitting subrogation in cases like the one before us will defeat the purposes of the Act.

For the reasons given the judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LEWE, P. J. and MURPHY, J., concur.