(No. 35066.—

Joseph R. Dworak, for the use of Allstate Insurance Company, Appellee, *vs.* Maurice Tempel, doing business as Tempel's Tavern, Appellant.

*Opinion filed September 24, 1959.*

CHARLES G. BRIGGLE, JR., of Springfield, and DOBBINS & FRAKER, of Champaign, (FRENCH L. FRAKER, of counsel,) for appellant.

RICHARD J. WATSON, of Champaign, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This cause is heard on a certificate of importance issued by the Appellate Court. It involves a proceeding under the Liquor Control Act instituted by plaintiff, Joseph R. Dworak, for the use of Allstate Insurance Company, against defendants, Maurice Tempel, doing business as Tempel's Tavern, and George B. McClellan, whose intoxication from liquor sold at Tempel's Tavern caused a collision between his car and that of plaintiff Dworak. Plaintiff sustained property damage of $545.32, which was paid by his insurer, Allstate Insurance Company, except for the $50 deductible under its collision policy. On appeal from a justice-of-peace court, the circuit court of Champaign County sustained the motion of defendant Tempel for judgment, which the Appellate Court reversed and entered judgment for plaintiff for $495.32. *Dworak v. Tempel,* 18 Ill. App. 2d 225.

The essential issue presented on this appeal is whether an insurance carrier is entitled to assert a claim under the Liquor Control Act, in its own right, or as subrogee of its

assured, either before or after the 1955 amendment to that act, for payments made to its assured for property damage caused by an intoxicated person.

The operative facts are stipulated. On December 2, 1955, at approximately 4:10 P.M., as plaintiff Joseph R. Dworak was driving his car in an easterly direction in the 600 block on West Washington Street in Champaign, Illinois, his vehicle was struck by a car approaching from the opposite direction, which veered completely into the eastbound traffic lane. That vehicle was operated by George B. McClellan, whose intoxication from liquors sold to him in Tempel's Tavern was the proximate cause of the collision, in which plaintiff Dworak sustained the property damage paid for by Allstate, his insurer.

The Appellate Court reversed the judgment for defendants, entered by the circuit court, and held that the insurer, Allstate Insurance Company, had a right of action under the Liquor Control Act as amended in 1955, as well as under the doctrine of subrogation, and entered judgment for plaintiff.

In determining the propriety of that judgment, we shall first consider whether Allstate may directly assert a claim in its own right under the terms of the Liquor Control Act, either before or after the 1955 amendments, and then consider whether it may assert any rights of subrogation under the act.

On the date of the collision, December 2, 1955, the relevant portion of the Liquor Control Act provided: "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication * * * of any person, shall have a right of action in his or her own name * * * against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and any person owning, renting,

leasing * * * any building or premises, and having knowledge that alcoholic liquors are to be sold therein * * * shall be liable * * * with the person or persons selling or giving liquors aforesaid * * *." Ill. Rev. Stat. 1955, chap. 43, par. 135.

Insurance carriers have asserted claims under this statute in several cases adjudicated by our Appellate Courts. While these decisions are not determinative herein, and different factual situations were involved, the reasoning of the courts is relevant in resolving this problem of first impression in this court.

In *Economy Auto Insurance Co.* v. *Brown,* 334 Ill. App. 579, the court denied the carrier's dram shop claim in its own right on the ground that its "property loss," through the payment of liability claims to persons injured by its insured, was neither proximately caused by, nor "in consequence of the intoxication," but was merely in consequence of the carrier's own liability policy, entered into voluntarily some time prior to the collision. The court therein also denied the carrier any right of subrogation, since, under this doctrine it would be entitled only to such remedies as its insured could assert, and its insured, as the tortfeasor in the cause, could assert no rights against the dramshop keepers or anyone else.

In *New Amsterdam Casualty Co.* v. *Gerin,* 9 Ill. App. 2d 545, the court held that a public liability insurance carrier which paid the claims against its insured, a hotel which was set on fire by an intoxicated person, had no right of action against those who served liquor to the intoxicated tortfeasor under the Liquor Control Act, either in its own right, or under any theory of subrogation. The court first reasoned that the statutory rule of construction, *ejusdem generis,* precluded the extension of the term "other person" in the Liquor Control Act beyond the classes specifically enumerated, and since the insurance carrier was not within the same general classification as those enumerated, it was

not entitled to a claim in its own right. The court then found that since the insured, which was the hotel, had no cause of action because of its own apparent negligence, consequently its insurer, the New Amsterdam Casualty Co., as its subrogee, could have no greater rights. In this connection the court stated at p. 548: "But it is basic that the subrogee can have no greater rights than the subragor. We are of the opinion in this case the hotel has no cause of action, and therefore New Amsterdam cannot be subrogated."

In *Eager* v. *Nathan*, 14 Ill. App. 2d 418, the court, in reliance upon the *Economy Auto Insurance* and *New Amsterdam* cases, rejected the right of the compensation carrier to recover in its own right under the terms of the Liquor Control Act. The court held that the carrier could not be included within the category of "other person" under the act, and that the insurance contract, rather than the intoxication, was the proximate cause of the compensation payments the carrier had to make. The court also rejected the dramshop claim made by the hotel for "loss of profits" resulting from the killing of its desk clerk by an intoxicated person, and for "reimbursement for the workmen's compensation award" it had to pay, on the ground that these were not "injuries to property" within the terms of the Liquor Control Act. The court explained that the only kind of property for which damages could be recovered under the Liquor Control Act was real or personal tangible property (*Howlett* v. *Doglio*, 402 Ill. 311); therefore, loss of profits and payment of compensation, which are merely pecuniary losses, were not compensable under the act.

The foregoing cases indicate that prior to the 1955 amendments to the Liquor Control Act, insurance carriers, whether liability, workmen's compensation or fire insurance, were denied the right to assert claims in their own right under the act on one or more of the following grounds:

that whatever property loss was sustained by the carrier was proximately caused by its own insurance policy, rather than by or in consequence of the intoxication, which was, at best, a remote cause; that the carriers were neither within the enumerated classes, nor within the category of "other persons" authorized to assert claims under the act; that the payment of claims was a pecuniary loss, rather than an injury to tangible property as contemplated by the act; and finally, that the broad purposes of the Liquor Control Act, to discourage the intemperate use of alcohol, are not advanced by transferring the business risks of the carrier to the dramshop keepers. Moreover, subrogation rights were also denied in these cases on the ground that the assured, because of his own culpability, had no rights under the Liquor Control Act to which the insurance carrier could be subrogated.

In 1955 the Liquor Control Act was amended, and although the effective date of the amendment was not until July 1, 1956, which was after the cause of action herein arose, it is suggested that the amendment applies retroactively.

Whether an amendment may be deemed retroactive depends upon whether it relates to the substantive rights, or whether it merely affects the remedy or matter of procedure. (*Orlicki* v. *McCarthy*, 4 Ill.2d 342.) Amendments relating to substantive rights must be applied prospectively. (*Theodosis* v. *Keeshin Motor Express Co.* 341 Ill. App. 8; *Merlo* v. *Johnston City and Big Muddy Coal and Mining Co.* 258 Ill. 328; *Beutel* v. *Foreman,* 288 Ill. 106.) This concept, founded on doctrines of natural law, was incorporated into the common law by Kent and Story, and was later incorporated as a constitutional or statutory restraint. *Orlicki* v. *McCarthy,* 4 Ill.2d 342, 346; Ill. Rev. Stat. 1955, chap. 131, par. 4.

An amendment imposing a new liability on defendant will be deemed substantive in character. (*Theodosis* v.

188

*Keeshin Motor Express Co.* 341 Ill. App. 8; *Keeley* v. *Great Northern Railway Co.* 139 Wis. 448, 121 N.W. 167.) Thus, in the *Theodosis case,* approved by this court in *Orlicki* v. *McCarthy,* the court held that an amendment to the Liquor Control Act increasing the *ad damnum* imposed a new liability upon defendant, and therefore could not be retroactively applied. The court stated, "It is one thing to take away a right previously conferred, but quite another to impose a liability."

The amendment involved herein eliminates the enumeration of classes of persons who may assert dramshop claims, and provides instead that "every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name * * *." This amendment, enacted by the legislature presumably with knowledge of the prior decisions barring claims except by those within the enumerated classifications, is apparently designed to obviate the possible discrimination between natural and artificial persons flowing from those decisions. (*Standard Industries, Inc.* v. *Thompson,* 19 Ill. App. 2d 319, 322.) Insofar as the amendment expands the classification of "persons" entitled to institute dram shop actions to include artificial persons, such as townships (*Town of City of Champaign* v. *Overmeyer's Inc.* 18 Ill. App. 2d 523), and corporations (*Standard Industries, Inc.* v. *Thompson*), the amendment subjects defendants to new and greater liability, and therefore is clearly substantive in character, and should *not* be retroactively applied to the instant case.

Nevertheless, even if the amendment were deemed applicable, it would still be necessary for the insurance carrier, as a "person" under the Liquor Control Act, to establish the other essential elements of this statutory action, namely, that it has been injured in its property "by" an intoxicated person served liquor by defendant. In our judgment, whatever "injury to property" the insurance carrier sustains in paying claims to its assured is by virtue

of its own contract of insurance, rather than inflicted "by" an intoxicated person. If it were not for the intervening contract of insurance, the carrier would sustain no loss; and the acts of the intoxicated person are at best a remote cause of the carrier's pecuniary losses and therefore cannot be made the basis of a claim by the carrier in its own right. The reasoning of the courts in *Economy Auto Ins. Co.* v. *Brown,* and *Eager* v. *Nathan* in this connection is still apropos. (1958 Ill. L. Forum 211.) Moreover, this rationale is consistent with the determination in *Howlett* v. *Doglio,* 402 Ill. 311, that injuries to property contemplated by the Liquor Control Act mean injuries to tangible real and personal property.

It must be recognized, however, that the fact that the insurance carrier does not have a claim in its own right under the Liquor Control Act under the circumstances herein, does not mean that it may not assert subrogation rights under the act. As hereinbefore noted, the court in the *Economy Auto Insurance Co. case,* in construing the Liquor Control Act, specifically distinguished between the claim of the insurance company in its own right, which the court held was not within the purview of the act, and the insurer's right to subrogation. In this connection, the court stated at page 588: "The theory of the subrogation cases is predicated on the equitable doctrine that one who has indemnified another in pursuance of his obligation to do so, is entitled to the means of redress held by the party indemnified against the individual causing the loss. It is a right exercised by the insurer as successor to the remedies of the person indemnified, *rather than in its own right.*" (Italics ours.) The court then denied relief on the subrogation theory, only because the assured therein was the intoxicated person, and had no rights to which the insurance company could be subrogated. The court explained at page 588-589: "In the case at bar, however, no such right of subrogation exists. Plaintiff, as insurer of Roach, would

be entitled to such remedies as he could properly assert, and inasmuch as he was the intoxicated tortfeasor he acquired no rights either against the dram shop keepers or the persons with whom he collided."

Thus, the court, by implication, recognized even prior to the 1955 amendment, that had the insured, Roach, not been the tortfeasor, and if he had been entitled to assert rights against the dram shop keeper, his insurer would have been subrogated to such rights.

The *Economy Auto Insurance Co. case* was so construed and distinguished in the recent case of *Standard Industries, Inc.* v. *Thompson*, 19 Ill. App. 2d 319. There, the court, after finding that insurance companies are "persons" under the Liquor Control Act, held that the company could assert a claim under the act, not in its own right, but as subrogee of the assured's valid claim, and in the assured's name. The court specifically stated at page 323, that the theory of the suit was not a recovery of the insurance company's own pecuniary losses, but was a subrogation claim based on the injury to the assured's property "by" the intoxicated Thompson.

That interpretation and approach is clearly consistent with the policy of this court to apply the expanding doctrine of subrogation, which originated in equity, and is now an integral part of the common law, in all cases where its essential elements are present, and where it effectuates a just resolution of the rights of the parties, irrespective of whether the doctrine has previously been invoked in the particular situation. *Smith* v. *Clavey Ravinia Nurseries, Inc*, 329 Ill. App. 548; *Geneva Construction Co.* v. *Martin Transfer and Storage Co.* 4 Ill.2d 273.

Under this doctrine of subrogation, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful acts of another will be given the rights of the injured person against the wrongdoer. (*Geneva Construction Co.* v. *Martin Transfer*

*and Storage Co.* 4 Ill.2d 273, 283.) Applying that doctrine to the circumstances of the instant case, it is apparent that the injured party, Joseph R. Dworak, not only had a common-law remedy against the intoxicated person who negligently injured him, but also a right, conferred by the Liquor Control Act, against the tavern operators and owners who were made statutory tortfeasors. Consequently, his insurance company, Allstate, which indemnified him for his loss, should be entitled to stand in the shoes of its insured, and enjoy the same means of redress arising out of the transaction.

It is argued, however, that the doctrine of subrogation should be applied only against the intoxicated tortfeasor, but not against the dram shop owner, whose liability is imposed by statute, and who is not guilty of a common-law tort. This basis of differentiation is without support in the case law. On the contrary, the insurer's right to subrogation has included statutory rights of the insured. (46 C.J.S. 154.) Subrogation rights were asserted under a statute making a city liable for injury to property by a mob or riot therein. *Northern Assurance Co.* v. *City of Milwaukee,* 227 Wis. 124, 277 N.W. 149.

Defendant insists that subrogation should be denied, since it would in no way effectuate the purpose of the act, which is to discourage the intemperate consumption of intoxicating liquor. At the present time, as realistically pointed out in *Standard Industries, Inc.* v. *Thompson,* 19 Ill. App. 2d 319, the injured party, as well as the operators and owners of dram shops, are usually insured, so that the real parties in litigation are the insurers. Consequently, the direct discipline on the dram shop operators and owners, originally effected by making them liable to the injured party, has now given way to an indirect discipline whereby the fear of losing insurance, or of prohibitive premiums, is a substantial motive for careful operation and leasing of taverns. In our judgment, this indirect discipline would

be enhanced by allowing the insurer of the innocently injured party to be subrogated, and to assert in the name of its insured his valid claim against the tavern operators or owners who have sold inquor indiscriminately, or under circumstances rendering them liable for injuries, and their insurers.

Moreover, such a course would be thoroughly consistent with the equitable considerations underlying the doctrine of subrogation. It is basic to the doctrine that one who indemnified the innocently injured party should be entitled to shift the economic burden so that it rests upon those responsible for the loss, and their insurers. If the legislature, in the public interest has seen fit to decree that the responsibility for wrongs arising out of the intemperate use of alcohol should rest not only on the intoxicated wrongdoer, but upon the dram shop operators and owners, and has imposed liability upon them under certain circumstances, it is, therefore, not for the courts to give them and their insurance carriers greater protection than other tortfeasors.

Nor is the recognition of subrogation rights herein in any way inconsistent with the observations of the court in the *Economy Auto Insurance Co. case.* The refusal of that court to shift the economic losses of the insurance carrier of the intoxicated wrongdoer onto the dram shop operators and their insurers is distinguishable, and predicated upon considerations different from those involved in the instant case, where the losses are shifted from the insurance carrier of the innocently injured party to the carrier insuring the statutory tortfeasors.

On the basis of this analysis it is our judgment that an insurance carrier is not entitled to assert a claim in its own right under the Liquor Control Act, either before or after the 1955 amendment, for payments made to its insured for property injured by an intoxicated person. However, the carrier may, as subrogee, assert the valid claim of its innocently injured insured under the Liquor Control

Act. Inasmuch as this was the main theory on which plaintiff's claim is predicated, the judgment of the Appellate Court in favor of plaintiff, and for the use of the subrogee, Allstate Insurance Company, should be and is affirmed.

*Judgment affirmed.*