50 Ill. App.3d 817 (1977)
365 N.E.2d 1309
In re ESTATE OF KAZUTO ITO, Deceased.  (HIROSHI YAMAGUCHI, Consul General of Japan, Petitioner-Appellant,
v.
CHICAGO TITLE INSURANCE COMPANY, Respondent-Appellee.)
No. 76-1227.
Illinois Appellate Court  First District (5th Division).
Opinion filed July 1, 1977.
*818 Masuda, Funai, Eifert & Mitchell, of Chicago (James R. Mitchell, Mary W. Shellenberg, and Joseph S. Parisi, of counsel), for appellant.
Stuart Finkle and Ned Langer, both of Chicago, for appellee.
Judgment affirmed.
Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:
This is an appeal from an order directing the executor of the estate of Kazuto Ito to pay $3,700 to respondent Chicago Title Insurance Co. (Title Co.) from the proceeds of the sale of certain real estate. The counsel general of Japan, appearing on behalf of Ito's devisees, appeals the order, contending that section 204 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 204) bars the participation of the Title Co. in the distribution of inventory assets.
Ito's will provided that his real estate be sold by his executor as soon as possible after his death and that the funds be sent to the devisees in Japan. Should a sale of the land not be made within one year after his death, it was provided that the executor dispose of the same by auction.
Ito died on May 10, 1970, and on August 2, 1971, his will was admitted to probate and the person named in the will was appointed executor. On December 8, 1971, the trial court approved an inventory which included two parcels of real estate. On January 7, 1972, the executor petitioned the court for a private sale of the real estate. The petition recited that the land was encumbered with a recorded $3,700 demolition lien in favor of the city of Chicago, a $4,083.54 first mortgage, and an agreed real estate commission of $500. It also stated that Oscar Mayer Company had offered to purchase the real estate for $7,000, and it prayed that an appraisal by a James J. Maloney be adopted and the executor authorized to accept the offer to purchase. A sale was apparently consummated with Oscar Mayer, although the record fails to disclose any order entered authorizing the sale. Neither does the record reveal the terms of the sale, other than what may be inferred from the allegations contained in the executor's petition to sell.
*819 On April 7, 1976, the executor petitioned for instructions from the court representing that the estate was ready for distribution and stating that a demolition lien was filed against the real estate in question; that the property was sold, pursuant to the order of court, but the lien was never paid; that no claim for said lien had been filed; and that the Title Co. had guaranteed the title to the purchaser and might have to satisfy the lien. In the petition, the executor requested instructions "as to whether he should make payment either to the City of Chicago to satisfy said lien, or to the Chicago Title & Trust Co. if they have made payment on said guarantee, or distribute the estate regardless of said pending claims." In reply, the Title Co. stated that the property had been sold pursuant to order of court and conveyed by an executor's deed dated February 16, 1972; that it had guaranteed title to the purchaser, Oscar Mayer; that when Oscar Mayer tendered to it the lien claim of the city of Chicago on April 19, 1974, it paid the amount of the lien to the city; that when the lien was released on May 2, 1972, the proceedings by the city to satisfy the lien were also dismissed; and that the estate was unjustly enriched by reason of its payment of the lien. It prayed for reimbursement from the assets of the estate. The counsel general responded that because neither the city of Chicago nor the Title Co. had filed a claim for satisfaction of the lien within seven months of the issuance of letters testamentary, the Title Co. was barred by section 204 of the Probate Act in the distribution of assets inventoried within the seven month period.
On June 7, 1976, the trial court found that the claim for lien "has never been filed against the estate and therefore is solely against the real estate involved" and that the executor "is authorized to distribute the proceeds of said estate * * *, and pay from the proceeds of the sale of the real estate the sum of $3,700 to the Chicago Title & Trust Company for sums paid to the City of Chicago." A motion to vacate was denied on June 16 with a finding of no just reason for delay of appeal.

OPINION
 1 The counsel general contends that the trial court erred in failing to bar the Title Co.'s claim, which he argues was mandated by section 204 of the Probate Act. At that time, this section provided in pertinent part:
"All claims against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, not filed within 7 months[1] from the issuance of letters testamentary or of administration, are barred as to the estate which has been inventoried within 7 months from the issuance of letters." (Ill. Rev. Stat. 1971, ch. 3, par. 204.)
*820 The Act defines the term claim as including "any cause of action." (Ill. Rev. Stat. 1971, ch. 3, par. 2(j).) A claim is not absolutely barred by failing to file it within the statutory period, but any right to participate in the distribution of inventoried assets is lost. (Messenger v. Rutherford (1967), 80 Ill. App.2d 25, 225 N.E.2d 94.) No exceptions to section 204 may be engrafted upon it by judicial decision (Pratt v. Baker (1964), 48 Ill. App.2d 442, 199 N.E.2d 307, cert. denied (1967), 389 U.S. 874, 19 L.Ed.2d 157, 88 S.Ct. 165), and its application may neither be waived nor may the doctrine of estoppel be applied (In re Estate of Newcomb (1972), 6 Ill. App.3d 1094, 287 N.E.2d 141). Moreover, where a legal claim should have been, but was not, filed against the estate within the statutory period, relief will not be accorded by the application of equitable principles. Wingate v. Pool (1860), 25 Ill. 102; Abrams v. Schlar (1960), 27 Ill. App.2d 237, 169 N.E.2d 583; Austin v. City Bank of Milwaukee (1936), 288 Ill. App. 36, 5 N.E.2d 585; Alderson v. Estate of Alderson (1922), 226 Ill. App. 176.
Here, no claim for satisfaction of the demolition lien was made within seven months of the issuance of the letters testamentary, and the real estate in question had been inventoried in compliance with section 204. Had compliance with section 204 been the trial court's only grant of power authorizing its order of payment out of the proceeds of the sale of the inventoried real estate, we and indeed the Title Co. would agree that the order was erroneous. However, the Act further provides that the trial court may order payment of a lien out of the proceeds of the judicial sale of a decedent's real estate. (Ill. Rev. Stat. 1971, ch. 3, par. 234(b).) In its order, the court ordered that the Title Co. be paid $3,700 "from the proceeds of the sale of the real estate * * * for sums paid to the City of Chicago." Thus, we see the issue on appeal to be whether the trial court properly ordered the payment under other powers granted by the Act.
Initially, we note that the will gave the executor the power to sell the property in question but limited its exercise to a sale at auction if the property was not sold within one year of his death. A power not exercised within the parameters delineated by the testator lapses. (Keller v. Schobert (1973), 13 Ill. App.3d 637, 300 N.E.2d 800, aff'd (1974), 58 Ill.2d 137, 317 N.E.2d 510.) The executor apparently recognized his power to conduct a private sale had lapsed when, more than a year after testator's death, he petitioned the court to authorize such a sale.
 2-4 A court may grant a petition for sale where the personal assets are insufficient to pay debts, costs of administration, or legacies charged by will upon real estate. (Ill. Rev. Stat. 1971, ch. 3, pars. 225-26; Rosen v. Rosen (1938), 370 Ill. 173, 18 N.E.2d 218; Moore v. Chandler (1871), 59 Ill. 466.) Where, as here, the testator shows a definite intention that the real estate devised be sold by the executor and that it is the proceeds of the *821 sale which should be distributed to those named by the will, the effect is a legacy of personally rather than a devise of realty. (Keller; Joslin v. Ashelford (1961), 29 Ill. App.2d 202, 172 N.E.2d 806.) At the time of the petition, the personal estate consisted of $600 worth of ceremonial swords and a cause of action against an insurance company of undetermined worth. Thus, it appears clear that the trial court had the power to order the sale of the property to satisfy legacies charged by the will against the real estate.
Looking to section 225 et seq. of the Act, which set forth the procedures to be followed in judicial sales, we note that section 234(b) provides that, in a proceeding to sell, the court may "direct the sale or mortgage of the property free of all mortgage, judgment or other liens that are due, provide for the satisfaction of all those liens out of the proceeds of the sale or mortgage, and settle and adjust all equities and all questions of priority between all parties interested." Ill. Rev. Stat. 1971, ch. 3, par. 234(b).
Here, the parties are in apparent accord that the real estate was sold pursuant to order of court. However, the record contains no order authorizing the sale nor does it otherwise disclose the terms of sale set by the court, one of which under section 234(b) could have required payment of the demolition lien.
We note also that no report of sale, as required by section 239 of the Act, was presented to the court for its approval. That section provides in pertinent part:
"It is the duty of the petitioner to present to the court authorizing the sale a verified report thereof describing the property sold and stating the name of the purchaser, the date and the terms of the sale, and the manner in which the terms of the decree were executed, but no report of sale is required if the sale has been made pursuant to a contract authorized by the court upon petition under Section 229. * * *
Upon the hearing the court may approve the report and confirm the sale or disapprove the report and order the property to be resold." (Ill. Rev. Stat. 1971, ch. 3, par. 239.)
In construing a predecessor of section 239, the supreme court observed:
"It was the legislative intent to confer upon the court ordering the sale a very broad power in the supervision of sales made under its order, and, as an incident thereto, to approve or disapprove the report of a sale as in its judicial discretion it shall deem proper. In harmony with this view it has been established that even though the premises may be declared struck off to the highest bidder he thereby acquires no interest to or in the property, but his bid, in legal contemplation, is a mere offer to buy. [Citations.] Unless the court confirms the report of sale there is no sale and neither the *822 administrator nor the executor is bound. [Citation.] From an application of these principles the rule emerges that the court is the real vendor and that the executor or administrator is merely its agent for the purpose of procuring offers of sale which the court, acting within its judicial discretion, may accept or reject. [Citations.] From the fact that the court is the vendor the principle may further be evolved that sales of this character by virtue of the statute, are under the absolute control of the court ordering the sale, and such court may approve, or of its own motion disapprove, any sale, as in the exercise of its sound judicial discretion it may deem to be for the best interest of the parties concerned in the sale." Ehrgott v. Seaborn (1936), 363 Ill. 292, 295-96, 2 N.E.2d 99, 100-01.
 5, 6 It is in the light of the fact that the court is the real vendor that we believe this matter should be considered. From this viewing point, we think it is significant that, in the order appealed from, the court provided that because no claim for the lien was filed against the estate the court was treating it as a claim solely against the real estate. The order then authorized payment to the Title Co. from the proceeds of the sale and also authorized distribution of the estate to the heirs and distributees. Thus, it appears to us that the court did not consider the claim of the Title Co. as being against the estate, which would have been barred by section 204; but, rather, it was exercising its power under section 234(b) to provide for the satisfaction out of the lien from the proceeds of the sale.
 7 Where the order appealed from states, as here, that the court was "advised in the premises" and the record is incomplete, it must be assumed that the decision was rendered in conformity with the law and that the facts before the court were sufficient to support the judgment. (Metropolitan Sanitary District v. United States Steel Corp. (1975), 30 Ill. App.3d 360, 332 N.E.2d 426, cert. denied, 424 U.S. 976, 247 L.Ed.2d 746, 96 S.Ct. 1482; Smith v. Pappas (1969), 112 Ill. App.2d 129, 251 N.E.2d 390.) The appellant bears the responsibility of supplying a complete record on appeal. (Nelson v. Nelson (1974), 17 Ill. App.3d 651, 308 N.E.2d 132.) As this court stated:
"Where the record is incomplete, a reviewing court will indulge every reasonable presumption favorable to the judgment, order or ruling appealed from. It will presume that the missing portion contained that which justified the action of the court. Any doubt arising from the incompleteness of the record will be resolved against the appellant. [Citations.] A party prosecuting an appeal must furnish a record sufficient to establish reversible error. [Citation.]" Sandberg v. American Machining Co. (1975), 31 Ill. App.3d 449, 452, 334 N.E.2d 246, 248.
*823 In the instant case, the petition for instructions informed the court that a sale had been made but that the demolition lien had not been paid. Because there is nothing contrary in the record before us, we presume that during the hearing on the petition, the court was aware that it had not confirmed the sale. That being the case, the court in its discretion had the power under section 239 to either confirm or disapprove the sale.
Thus, under the circumstances here, we believe that the court under power granted by section 234(b) properly authorized the payment from the proceeds of the sale to satisfy the lien and, by so doing, it impliedly confirmed the sale.
 8 Further, we believe the payment was properly authorized to be made to the Title Co. as subrogee of the city of Chicago. It appears to be the rule that an insurer who, pursuant to a legal liability, satisfies a loss unjustly thrust upon its insured is subrogated to the common law and statutory rights of the insured upon the equitable doctrine that the economic burden should be shifted to the party responsible for the loss. (Dworak v. Tempel (1959), 17 Ill.2d 181, 161 N.E.2d 258, 34 Ill. L. & Prac. Subrogation § 4, at 216-17 (1958).) The counsel general makes no point to the contrary in his brief and, as a matter of fact, took the position in the trial court that the Title Co. was not entitled to payment because it was the subrogee of the city, whose claim it contended was barred.
In view of the foregoing, we affirm the judgment of the trial court.
Affirmed.
MEJDA and WILSON, JJ., concur.
NOTES
[1] Now six months, by amendment effective October 1, 1972. Ill. Rev. Stat. 1975, ch. 3, par. 204.