*In re* ESTATE OF MARY WORRELL, Deceased.—(DENNIS BARNES, Claimant-Appellant, *v.* DAWSON M. COOPER, Adm'r of the Estate of Mary Worrell, Defendant-Appellee.)

Fifth District    No. 80-271

Opinion filed September 4, 1981.—Rehearing denied October 13, 1981.

KARNS, J., dissenting.

Dennis A. Brandt, of Mateyka, Hill, Hill and Armstrong, of Granite City, for appellant.

John A. Farrell, of Farrell, Heil, Long and St. Peters, P. C., of Alton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

In dispute is a claim by Dennis Barnes against the estate of Mary Worrell. The claim arose out of a dramshop action brought by him against her doing business as Mary's Lounge. Barnes had brought the action while Mary Worrell was alive, but she died intestate during the pendency of the suit. Before Barnes filed his claim against her estate, letters of administration had been issued, an inventory had been filed four months later and the six-month claim period for creditors provided by section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 18—12) had

expired. Section 18—12(a) provides in pertinent part that "[a]ll claims against the estate of a decedent * * * not filed within 6 months from the issuance of letters of office are barred as to the estate which has been inventoried within 6 months from the issuance of letters." In addition to the tavern, decedent had operated, as sole proprietor in this instance as well, a motel known as Holiday Manor. Both of the businesses were listed on the inventory filed during the six-month claim period. After Barnes filed his claim, the administrator filed a supplemental inventory of newly discovered assets, which were of relatively slight value and insufficient to satisfy the claim of Barnes. Several months after Barnes had filed his claim, the administrator petitioned for distribution of that part of the estate included in the initial inventory. Approximately 15 months had elapsed between Mary Worrell's death and the administrator's petition for partial distribution. During a considerable part, if not all, of that time the administrator had continued the operation of both of decedent's businesses at a profit. In response to the attempt by Barnes to reach these profits, the administrator maintained and the court agreed that the claim could not be satisfied from "income" generated by assets inventoried during the six-month claim period. The court ordered that his claim could be satisfied "only from assets and the income of assets inventoried after the * * * six-month claim period." From a later order approving the final report of the administrator for the assets listed on the supplemental inventory, Barnes appeals. He contends, *inter alia*, that his claim should have been satisfied out of the profits generated by the administrator's operation of the decedent's businesses after her death.

Barnes had instituted suit against Mary Worrell on September 17, 1976, complaining that an intoxicated patron of Mary's Lounge had, while driving, collided with the automobile driven by Barnes and caused him personal injury. Over three years later, on October 23, 1979, a jury found in favor of Barnes and assessed damages in the amount of $25,000. That judgment was subsequently reduced to the sum of $15,000 in order that it accord with the limits set forth in the Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, par. 135). Barnes was awarded costs in the amount of $349.15. According to Barnes in his brief to this court, decedent's dramshop insurance paid him $5,000 plus the costs of $349.15.

A little over a year before the jury verdict and almost two years after the institution of suit by Barnes, Mary Worrell died on July 19, 1978. Letters of administration were issued on August 22, 1978. Approximately four months later, on December 19, 1978, the administrator filed the initial inventory, which included, as Item No. 5, the "[t]avern business" and, as Item No. 6, the "[m]otel business." Notice to claimants was published, and on February 22, 1979, the six-month claim period of section 18—12 expired. Two months later Barnes, having learned of the death of Mary

Worrell, made a claim, dated April 30, 1979, against the estate. On May 4, 1979, he filed a motion in the dramshop action to substitute the administrator of the estate as party defendant in place of the decedent. On May 29, 1979, the administrator moved to dismiss the claim of Barnes "as to the estate inventoried within six months from the issuance of letters and as to all of the estate listed in the aforesaid inventory."

Approximately three months after Barnes filed his claim, the administrator on July 3, 1979, filed a "report of his acts and doings * * * from August 22, 1978, through June 30, 1979." There is a notation to the effect that the "[r]eceipts for tavern and motel operations are through April 30, 1979, only." The first item of receipt is in the amount of $19,068.77 "[f]or tavern business operation known as 'Mary's Lounge' and motel business known as 'Holiday Manor.' " There is a direction to "see monthly statements for the period August, 1978, through April 1979, attached hereto." The first item of disbursement is in the same amount of $19,068.77 "[f]or tavern business operation known as 'Mary's Lounge' and motel business known as 'Holiday Manor.' " The direction to see the same monthly statements follows, together with this statement:

> "Except for current balances for each of the businesses, net has been distributed to William Wilkinson, Robert Wilkinson and Barbara Cooper [decedent's children] who devote a substantial amount of their time to the tavern and motel operations."

Each monthly statement includes under the heading of "Overhead Expenses" an item for "Wages," which varied in amount from month to month from as little as $542 in one month to as much as $1,300.50 in another. The report contains a summary of the monthly statements for each of the two businesses. That summary indicates a total profit from the tavern business for the period from August 1978 through April 1979 of $10,631.15 and a total profit from the motel business for the same period of $8,437.62. The profits combined total $19,068.77. In this summary the administrator notes parenthetically as follows:

> "(The above figures are not income tax statements; have not been adjusted to give consideration to the services of William Wilkinson, Robert Wilkinson and Barbara Cooper who devote a substantial amount of time to the business operations; also, note that the heirs have advanced substantial sums to the Administrator for the payment of funeral expenses, administration expenses and debts.)"

We note listed under "Deductions" on the Illinois Inheritance Tax Return filed April 30, 1979, a single debt in the amount of $28.40 owed to the Illinois Department of Revenue as the balance of decedent's 1978 income tax; expenses of administration in the sum of $6,603.40, of which $5,600 constitutes the fee of the attorney; and funeral expenses in the amount of

$1,390.25. The return indicates that no Federal estate tax is due. The total gross estate is listed on the return as $300,180.87.

Also on July 3, 1979, the administrator filed a first supplemental inventory listing assets not inventoried within six months of the date of issuance of the letters of administration. The combined value of the four items listed there was $993.68. The supplemental inventory did not include as assets any of the profits realized from the administrator's operation of either of the two businesses. On November 28, 1979, the administrator petitioned for leave to make partial distribution of the estate. That same day an order was entered authorizing distribution of nearly all of the items included in the inventory filed on December 19, 1978, including items Nos. 5 and 6, that is the tavern and motel businesses. Over the objection of Barnes, the court ordered on January 17, 1980, that his claim could be satisfied only from assets and the income of assets inventoried after the expiration of the six-month claim period. On April 1, 1980, the administrator filed a final report for the assets listed on the supplemental inventory. On May 16, 1980, an order was entered approving the final report for those assets on the supplemental inventory. It is from this order that Barnes appeals. Prior to entry of this order the parties had negotiated an agreed value of $1,000 as to the assets listed on the supplemental inventory. Barnes subsequently received that amount. Since Barnes has received from the estate the amount of $1,000 and the dramshop insurer $5,000, the amount of his unpaid claim against the estate stands at $9,000 plus interest.

The issue presented is whether profits generated by an administrator's operation of a decedent's business, inventoried within the six-month claim period, may be used to satisfy a creditor's claim filed after the six-month claim period has elapsed but before the administrator has filed a petition for distribution of the estate so inventoried.

■■ It is well settled that where a claim against an estate is filed and allowed after the expiration of the claim period, an order or judgment allowing such a claim must be special, ordering payment only out of assets which have not been inventoried within the claim period. (*Messenger v. Rutherford* (1967), 80 Ill. App. 2d 25, 225 N.E.2d 94.) As was said in *In re Estate of Bird* (1951), 410 Ill. 390, 396-97, 102 N.E.2d 329, 333:

> "[I]t appears that although section 204 [repealed; now section 18—12] of the Probate Act is similar in a limited aspect to a statute of limitations in that claims filed after the 9-month [now six-month] period following the issuance of letters of administration may not be satisfied out of assets inventoried within that period, and has consequently been loosely referred to as a statute of limitations in some of the early cases, nevertheless, the courts have uniformly recognized that this section does not totally bar claims,

as do general statutes of limitations, and that even if the claim is filed after the statutory period, it may be asserted against after-discovered assets, (*People v. Small*, 319 Ill. 437; *Pufahl v. Estate of Parks*, 299 U.S. 217;) or heirs and distributees of the estate, (*Syndacker v. Swan Land and Cattle Co.* 154 Ill. 220; *Durflinger v. Arnold*, 329 Ill. 93;) or other security. (*Waughop v. Bartlett*, 165 Ill. 124.)"

It is also well established that courts are not at liberty to create exceptions to section 18—12 or to provide late claimants relief through the application of equitable principles. As was said in *In re Estate of Ito* (1977), 50 Ill. App. 3d 817, 820, 365 N.E.2d 1309, 1311:

"No exceptions to section 204 [repealed; now section 18—12] may be engrafted upon it by judicial decision (*Pratt v. Baker* (1964), 48 Ill. App. 2d 442, 199 N.E.2d 307, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165), and its application may neither be waived nor may the doctrine of estoppel be applied (*In re Estate of Newcomb* (1972), 6 Ill. App. 3d 1094, 287 N.E.2d 141). Moreover, where a legal claim should have been, but was not, filed against the estate within the statutory period, relief will not be accorded by the application of equitable principles. *Wingate v. Pool* (1860), 25 Ill. 102; *Abrams v. Schlar* (1960), 27 Ill. App. 2d 237, 169 N.E.2d 583; *Austin v. City Bank of Milwaukee* (1936), 288 Ill. App. 36, 5 N.E.2d 585; *Alderson v. Estate of Alderson* (1922), 226 Ill. App. 176."

The purpose of the statutory claim period is to promote the early settlement of estates. Quoting, the court in *Messenger v. Rutherford* stated, " 'The purpose of the act in regard to the administration of estates was to facilitate their early settlement, and the limitation for the exhibition of claims * * * had that particular purpose in view.' " 80 Ill. App. 2d 25, 29, 225 N.E.2d 94, 97.

■■ Although in our research we have discovered no case law treating the issue before us, we think that in view of the purpose of the claim period to facilitate the early settlement of estates, the position of the claimant here is well taken. Protecting profits derived from an administrator's operation of a decedent's business from any late claim—no matter how long such operation might be continued by an administrator—would not provide incentive to an administrator to seek early distribution of an estate. Distribution, by its nature, deprives an administrator of any further opportunity to operate a decedent's business. Making profits derived from an administrator's operation of a decedent's business subject to a creditor's claim that was filed after the six-month period would encourage an administrator to petition for distribution of an estate as soon as possible

after the six-month claim period expires. For this reason we think that business profits generated by an administrator's operation of a decedent's business should be deemed in the nature of newly discovered assets for purposes of satisfying a valid claim against an estate filed after the expiration of the six-month claim period, in which the business itself was inventoried, but before the filing by the administrator of the petition for distribution of the business so inventoried. Indeed, we can think of no policy reason against such a holding.

The record is unclear as to whether the administrator operated the decedent's businesses for the entire 15-month period between the decedent's death and the filing by the administrator of his petition for distribution of the estate inventoried within the six-month claim period. But we know from the administrator's report filed July 3, 1979, that he operated decedent's businesses for a period of at least nine months after the decedent's death at a declared profit of $19,068.77. There is in that report a notation to the effect that part of this sum, all of which the administrator had distributed to the decedent's three children, was in the nature of compensation for their time spent on "the tavern and motel operations." We note, however, that any compensation due the three for their efforts with respect to these businesses could have been listed as a business expense under the heading of "Overhead Expenses," as was, for example, the item for "Wages." The amount of profits declared would have been reduced accordingly.

It goes without saying that those who take under a will or by the law of descent and distribution receive whatever remains of an estate after payment of, among other things, legitimate debts against it. By our decision today Mary Worrell's heirs receive no less than the law contemplates that heirs or legatees should receive, i.e., the tavern business whole and intact, undiminished in value. The claimant here presents a valid claim, a legitimate debt, against the estate, which apparently contains assets, by virtue of the administrator's successful operation of decedent's businesses prior to distribution, sufficient to pay that claim. We think that our holding accords not only with the purpose of the six-month claim period but also with the letter and the spirit of the law of descent and distribution.

Because of our disposition of this issue, we do not address the other issues raised by Barnes on appeal. We note that the effective date of section 18—12 of the Probate Code as it is set forth in the Illinois Revised Statutes published in 1979 (Ill. Rev. Stat. 1979, ch. 110½, par. 18—12) is January 1, 1980. Thus, the statute as amended has no bearing on the case at bar, in which letters of administration were issued on August 22, 1978.

In consequence of our holding we reverse with directions to allow the

claim of Dennis Barnes to be paid from any profits derived from the administrator's operation of decedent's businesses, and we remand the cause for a hearing to determine the amount of such profits.

Reversed and remanded.

KASSERMAN, P. J., concurs.

Mr. JUSTICE KARNS, dissenting:

This case may present an issue on which there is no precise precedent; however, the statute, as amended, and case law (see, *e.g., Messenger v. Rutherford* (1967), 80 Ill. App. 2d 25, 225 N.E.2d 94) persuade me that the claim filed here is barred as to the earnings of assets inventoried within the six-month claim period. It seems to me improper to separate the earnings from these assets any more than it would be to separate the interest earned on a bond inventoried within the six-month claim period.

The effect of the majority holding will be to discourage operation of decedent's businesses by personal representatives, which benefit both claimaints, whose claims are timely filed, and heirs and legatees, who have a proper interest in the efficient administration of decedent's estates, and to whom the personal representative owes the primary duty of prudent administration. I know of no reasoning that would support the majority's statement that the early winding up of an estate is always indicated or desirable when it involves the operation of a successful business. In fact, section 19—6 of the Probate Act contemplates the necessity and desirability of continued operation of a decedent's business. Ill. Rev. Stat. 1979, ch. 110½, par. 19—6.

I would note that the majority holding allows the claim to be satisfied from earnings accruing within the six-month claim period even though these earnings were realized through the efforts of decedent's children and only heirs, who quite understandably made no claim for wages inasmuch as no claim was filed against the estate and they were the sole beneficiaries. During the six-month claim period this claim was an unliquidated cause of action, not reduced to judgment. The solution reached by the majority does not seem to me to reach an equitable result.