NATIONAL BANK OF BLOOMINGTON, Adm'r of the Estate of Arthur M. Podgorski, Deceased, Plaintiff-Appellee, *v.* JASON ARTHUR PODGORSKI *et al.*, Defendants-Appellants.

Fourth District   No. 14597

Opinion filed February 17, 1978.—Rehearing denied March 16, 1978.

John P. Nicoara, of Baner & Nicoara, of Peoria, for appellants.

Mike McElvain, of Thomson, Thomson, Zanoni, Flynn, Weintraub & McElvain, of Bloomington, for appellee.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Defendant Illinois Farmers Insurance Company (Farmers) appeals from a declaratory judgment of the circuit court of McLean County denying Farmers subrogation rights to obtain reimbursement for payments it had made and would be required to make in the future to defendant Sally Podgorski pursuant to the survivor's benefits provision of a policy of automobile insurance it had issued to her deceased husband Arthur M. Podgorski.

The suit was brought by plaintiff National Bank of Bloomington, as administrator of the decedent's estate, against defendants Jason Arthur Podgorski, a minor, the decedent's only child; Sally Podgorski; Charles

Rainwater; State Farm Insurance Company; and Farmers. The complaint alleged that (a) decedent had been killed as the result of an automobile collision with a car driven by defendant Rainwater insured by defendant State Farm Insurance Company, (b) the limits of that policy were in the sum of $50,000 and that State Farm Insurance Company had offered to pay to plaintiff the sum of $49,000 in full settlement of the wrongful death claim against defendant Rainwater, (c) at the time of his death, decedent had an automobile insurance policy with Farmers pursuant to which certain survivor's benefits had been paid to defendant Sally Podgorski and that Farmers claimed subrogation rights to the extent of said payments in the event of settlement of the wrongful death claim.

Plaintiff requested approval of the settlement, a determination of the interest of the decedent's widow, Sally Podgorski, his child Jason Arthur Podgorski, plaintiff's attorneys and Farmers in the proceeds and a determination of Farmers' future obligations on its insurance policy. Various responsive pleadings were filed. After a hearing on the merits on July 21, 1976, the court ruled that the dependency of the widow and son of the decedent were each 50% and that they were entitled to split the net proceeds of the settlement equally. The court also ruled that Farmers had no right of subrogation against the proceeds and that Farmers was required to continue to make payments under the insurance policy until the payment provided for there had been fully paid.

The subrogation provision of the policy provided:

> "Subrogation. In the event of any payment under this endorsement, the Company is subrogated to the rights of the person to or for whom such payments were made, to the extent of such payments, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

The trial court's reason for denying subrogation to Farmers was that the provision of section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2), which provides for wrongful death recovery, states that except under circumstances not here applicable "the amount recovered * * * shall be for the *exclusive benefit* of the surviving spouse and next of kin * * *" (emphasis added), and thus indicates a public policy which would prohibit subrogation rights attaching to the proceeds. In support of the court's ruling, plaintiff cites an article by Jack E. Horsley entitled *Wrongful Death Act* appearing in 1967 U. Ill. L.F. 93, 105-06, which states:

> "Since the statute is designed for remedying the financial deprivation of the widow and dependent children, neither the personal representative nor the estate of the deceased, nor any

creditor or contractual claimant has any interest in or right to the benefits of any judgment recovered under the Wrongful Death Act."

Plaintiff also cites similar expressions in *City of Chicago v. Major* (1857), 18 Ill. 349; *Voorhees v. Chicago & Alton R.R. Co.* (1917), 208 Ill. App. 86; and *Wright v. Royse* (1963), 43 Ill. App. 2d 267, 193 N.E.2d 340. The statements in those cases, however, are made in the context of explaining that these proceeds are not general assets of the estate of the deceased and are not subject to the claims of his creditors.

Farmers, on the other hand, contends that it is entitled to subrogation both by the express terms of the policy and by implication arising as a result of its payment of benefits to the widow. It notes that subrogation has been permitted (a) to an insurer who has paid uninsured motorist benefits, to the insured's action against the uninsured motorist (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247), (b) to a collision carrier who has paid its insured's claim for property damage, to the insured's dramshop action against the tavern which sold liquor to the person causing the damage (*Dworak v. Tempel* (1959), 17 Ill. 2d 181, 161 N.E.2d 258), and (c) to an employer who had paid workmen's compensation to his employee, to the employee's action against a third party tort feasor causing the compensable injury even though no statutory provision for subrogation existed at the time. *Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540.

No case has been presented which rules on the question of whether death benefits under section 2 of the Wrongful Death Act, dramshop benefits recovered for "the exclusive benefit of persons injured in loss of support" under section 14 of article VI of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135), or similar benefits recovered by or on behalf of an individual for the death or physical injury of another under similar statutes may be subject to subrogation. The members of this panel other than the writer conclude that the trial court correctly determined that the "exclusive benefit" phrase of section 2 of the Wrongful Death Act does set forth a public policy that would exempt from subrogation the shares of the widow and next of kin in the wrongful death award.

■■ Because of the decision in *McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140, that the right of a widow and next of kin to receive wrongful death benefits is personal property and an asset of their estates if they die before receiving the benefits, the writer is of the opinion that there is no absolute prohibition against subrogation rights attaching to the right to receive these benefits.

■■ The panel is in unanimous agreement that in the instant case no right to subrogation was shown. The provision of the policy which

purports to subrogate Farmers to the "rights" of the widow does not limit those "rights" in any way. Taken literally, the policy would purport to subrogate the insurer to a right totally unrelated to decedent's death. More narrowly construed, it would subrogate the insurer to the beneficiary rights in the probated estate of the decedent. Obviously neither was intended. The provision is ambiguous and must be construed most strongly against the insurer (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247). The most logical interpretation to give the subrogation provision, construing it against the insurer, is to interpret it as subrogating the insurer to the beneficiaries' rights against a third party for causing a loss for which the insurer had indemnified the beneficiary. This is the general basis of an insurer's right of subrogation (see 44 Am. Jur. 2d *Insurance* §1820 (1969)).

The survivors benefits granted to the defendant widow Sally Podgorski were stated by the policy to be 85% of the average weekly earnings of the deceased for the year previous to his death subject to a $150-per-week limit. The payments were to continue for a period of 260 weeks. To qualify she had to have been dependent upon him for income at his death. The payments to her were to abate if she died or remarried. The loss for which this provision indemnified the widow was her loss of support for such time as she lived and remained a widow but for no longer than 260 weeks.

The action for wrongful death under section 2 of the Wrongful Death Act resides in the personal representative upon behalf of the widow and next of kin. Only a single award is obtained and that award is made for losses in addition to loss of support. (See IPI Civil No. 31.04 (2d ed. 1971).) The net proceeds of any judgment or settlement are divided among the widow and the next of kin on the basis of the percentage of dependency each bore to the deceased. Thus, if a loss of the next of kin (here a child survived) other than loss of support formed part of the award, the widow's share would be enhanced. To the extent that loss of support was the basis for most of the widow's net distribution from the award, that loss of support would be for the entire amount of time that the widow would have been likely to receive support rather than for 260 weeks and as determined, would be hers regardless of how long she lived or remained a widow.

When each weekly $150 payment is made to the widow to indemnify her for her loss of support occasioned by the husband's death, there is no formula to determine the portion of her wrongful death award that might also be indemnifying her for that loss of support for that week. Accordingly, even if Farmers were entitled to subrogation, there is no formula to determine the amount of that subrogation.

■■ A further problem exists in permitting subrogation in a case of this

nature. The provision of the policy under which the defendant widow receives benefits is of the type which rarely fully indemnifies the beneficiary while policies of insurance providing for payments of property damage, the type of policy where subrogation is most often permitted, more often do so (see Keaton, Basic Text on Insurance Law 152 (1971)). A compromise wrongful death settlement based upon policy limits available is also unlikely to fully indemnify the widow. Under these circumstances, the question arises as to whether (1) the insurer is entitled to receive all that it has paid as first fruits of the award received from the third party tort feasor, (2) the policy beneficiary is required to pay back only the excess over full indemnity, or (3) a proration is made (see Keaton, at 161). Even if the general rule is determined to be that the insurer's subrogation rights get the first fruits, there is a grave question if such a rule could be equitably applied to the instant situation.

Because the majority of this panel conclude that public policy would preclude subrogation rights to attach to a wrongful death award and because the entire panel concludes that no subrogation could equitably be enforced here, we affirm.

Affirmed.

CRAVEN and WEBBER, JJ., concur.