The TRAVELERS INDEMNITY COM-
PANY OF ILLINOIS, Plaintiff,

v.

Roy MOORE, Individually and as Admin-
istrator of the Estate of Gregory Moore;
Shirley Moore; Eric Moore; Allen
Tomlinson; Nancy Tomlinson; Critic
Mills, Inc.; Washington Hospital Cen-
ter; Burlington Northern Railroad; the
Royal Insurance Company of America;
Aetna Casualty and Surety of Illinois;
Illinois Department of Public Aid; Em-
ployers of Wausau Insurance; First
State Insurance, Defendants.

No. 84–3376.

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 5, 1986.

Frederick P. Velde, Heyl, Royster, Voelk-
er & Allen, Springfield, Ill., for plaintiff.

William A. Allison, Dane, Allison, Saint
& Ehlers, Bloomington, Ill., Steven D.
Keefe, Washington, D.C., David S. Flem-
ing, Karon, Morrison & Savikas, Chicago,
Ill., Robert E. Gillespie, Michael Logan,
Calandrino, Logan, Robison & Long, Brent
Cain, Giffin, Winning, Lindner, Newkirk,
Cohen & Bodewes, Mary Lee Leahy,
Springfield, Ill., Barry N. Gutterman, Na-
perville, Ill., for defendants.

OPINION AND ORDER

MILLS, District Judge:

We apply here the concept of *"depe-
cage"*.

On April 1, 1982, an explosion occurred
at a welding shop in Cass County, Illinois,
resulting in serious injury to three persons
named as Defendants in this lawsuit.
Sometime after the explosion, the insur-
ance carrier for the shop, the Travelers
Indemnity Company of Illinois (Travelers),
filed this statutory interpleader action pur-
suant to 28 U.S.C. § 1335 against Roy

Moore (administrator of the estate of Gregory Moore, who was killed in the explosion), the Washington Hospital Center of Washington, D.C. (which treated Gregory Moore), and a variety of other parties.

The action seeks a declaratory judgment as to how the proceeds of the insurance policy covering the shop, currently deposited in escrow by Travelers, should be distributed. Presently before the Court are cross motions for summary judgment on Counts I and II of Washington Hospital's cross-claim against Moore, which seeks a declaration that as a result of services it provided to Gregory Moore, the hospital has a valid and enforceable lien against (1) the estate of Gregory Moore, and (2) the proceeds of any wrongful death claim Moore may have against any negligent party. Also before the Court are motions for summary judgment filed by other parties asserting claims to the proceeds of the insurance policy.[1] These parties move for summary judgment on their cross-claims against Washington Hospital for declaratory relief to the effect that the hospital has no lien or claim to those proceeds.

### Summary Judgment Standard

Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining whether an issue of material fact exists, the Court must construe the facts alleged in the light most favorable to the party opposing the motion for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985). Cross motions for summary judgment require no less careful scrutiny of the factual allegations. *LacCourte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.1983). In determining whether such undisputed facts entitle one of the parties to judgment in their favor, the Court's inquiry "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [moving party] is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448, 81 U.S. 442, 20 L.Ed. 867 (1872) (emphasis in original)).

The parties are essentially in agreement as to the facts that are necessary to resolve the issues presented by the motions now before the Court. The entry of summary judgment is therefore appropriate. Before turning to the issues presented by these motions, a brief review of the facts of this case is necessary.

### Background

On April 1, 1982, Steve Edwards and Gregory Moore went to the premises owned by Critic Mills, Inc. (Critic Mills) in Cass County, Illinois, to do repairs to the facilities. While Edwards was using an electric welder, the explosion and fire oc-

---

1. The following is a summary of all claims, liens, and demands known to have been asserted against the insured welding shop and its insurer, Travelers. Roy Moore, individually and as administrator of the estate of Gregory Moore, Shirley Moore and Eric Moore seek damages resulting from the death of Gregory Moore. Allen Tomlinson seeks damages for personal injury as a result of the explosion. Nancy Tomlinson seeks damages for loss of consortium as a result of Allen Tomlinson's injuries. Critic Mills seeks damages to its property in excess of $1.9 million. Washington Hospital has asserted a hospital lien under the laws and statutes of the District of Columbia against the insured's policy of insurance in the amount of $237,081.60. The Burlington Northern Railroad has asserted a property damage claim against the insured for $7,648.04. Royal Insurance Company of America is asserting a subrogation claim for $99,250.34, the amount paid by Royal Insurance to Critic Mills pursuant to a policy of insurance with Critic Mills. First State Insurance Company is asserting a subrogation claim in excess of $697,000.00, the amount paid by First State to Critic Mills pursuant to a policy of insurance with Critic Mills. Aetna Casualty and Insurance Company of Illinois is also asserting a subrogation claim based on a policy of insurance with Critic Mills.

curred. Gregory Moore and Allen Tomlinson, an employee of Critic Mills, were present at the place where Steve Edwards was doing the welding. All three parties suffered burns, with Allen Tomlinson and Gregory Moore receiving the worst burns. Allen Tomlinson was treated for his burns at Memorial Hospital in Springfield, Illinois. Gregory Moore was also initially treated there but was later transferred to the burn unit of the Washington Hospital Center in the District of Columbia. Gregory Moore remained in that hospital until he died on May 27, 1982, as a result of the burns received in the explosion.

On May 30, 1982, Washington Hospital sent a statement for the treatment of Gregory Moore to 704 Railroad Street, Beardstown, Illinois, the address contained under patient identification in the hospital's records and the same address that Roy Moore wrote on the Washington Hospital's return envelope as his own address. On June 28, 1982, Roy Moore was appointed Administrator of the Estate of Gregory Moore, Deceased, by the Circuit Court of Cass County, Illinois. Letters of office

were issued on that date. In a letter dated July 6, 1982, William Allison notified the hospital that he was the attorney for the estate of Gregory Moore and requested a copy of the itemized hospital charges. On July 12, 1982, the hospital submitted to William Allison its itemized statement of hospital charges for treatment provided to Gregory Moore.

Washington Hospital sent additional statements for hospital charges to Roy Moore. In response, Roy Moore wrote a letter to the hospital dated September 18, 1982, informing the hospital that a lawsuit was pending and that all bills for Gregory Moore were to be sent to the Illinois Department of Public Aid. There is no written contract between Moore and the hospital.

On July 17, 1982, Washington Hospital filed a hospital lien for medical services rendered to the decedent pursuant to the District of Columbia Code, §§ 38–301 *et seq.* (1981)[2], in the amount of $237,081.60 and notice of said lien was served upon Travelers, Aetna[3], Critic Mills, Edwards,

2. Count II of the hospital's cross-claim against the Moores is based upon District of Columbia Code, § 38–301 *et seq.* (Hospital Lien Statute). That statute provides, in relevant part:

Section 38–301. *Hospital's lien for services on recovery in accident cases.*

Every association, corporation, or other institution, in any agency of the United States or the District of Columbia, maintaining a hospital in the District of Columbia, which shall furnish medical or other service to any patient injured by reason of an accident causing injuries, ... shall, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, have a lien upon that part going or belonging to such patient, of any recovery or sum had or collected or to be collected by such patient, or by his heirs or personal representatives in the case of his death, whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital for the treatment of such patient in such hospital ...

Section 38–302. *Notice.*

No such lien shall be effective, however, unless a written notice containing the name and address of the injured person, and the name of the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries re-

ceived, shall be filed in the office of the Recorder of Deeds of the District of Columbia in a docket provided for such liens, prior to the payment of any monies to such injured person, his attorneys, or legal representatives as compensation for such injuries; nor unless the hospital shall also mail, postage prepaid, a copy of such notice with a statement of the date of filing thereof to the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries sustained prior to the payment of any monies to such injured person, his attorneys, or legal representatives as compensation for such injuries. Such hospital shall mail a copy of such notice to any insurance carrier which has insured such person, firm, or corporation against such liability, where the name of such insurance carrier is ascertained.

Since it is undisputed that the hospital filed, on June 17, 1982, a lien containing the information required by the statutes noted above and served copies of this lien on all interested parties prior to the payment of any monies to Mr. Moore's estate, Washington Hospital perfected its lien in accordance with District of Columbia law.

3. Aetna Casualty and Insurance Company of Illinois (Aetna) is another insurance company whose policy covers Critic Mills. The issues as

the State of Illinois, Attorney William Allison, and Roy Moore, prior to the payment of any money to the injured person, his attorney or his legal representative.

On September 21, 1984, Travelers Indemnity Company of Illinois (Travelers), the insurance carrier for Steve Edwards, Robert J. Edwards, and Edwards Welding Shop (Edwards), filed the underlying interpleader action, pursuant to 28 U.S.C. § 1335, naming Washington Hospital and the Moores among others as Defendants. Pursuant to this Court's order of September 25, 1984, Travelers deposited $300,000 in an escrow account as full satisfaction of its liability under its insurance policy issued to Edwards and on April 11, 1985, the Court entertained Travelers' motion for summary judgment. Finding that Travelers was a disinterested stakeholder faced with conflicting claims and demands far in excess of the insurance policy limits, this Court granted Travelers' motion for summary judgment and ordered the following relief, pursuant to 28 U.S.C. § 2361:

1. That all parties hereto are restrained and enjoined permanently from instituting or prosecuting any action against Travelers Indemnity Company of Illinois or their insureds for the recovery of any amount therefrom arising out of the occurrence and policy at issue here;

2. That all parties with potential claims, liens, or demands are required to make known their intentions and join this action on or before May 16, 1985.

The summary judgment motions now pending ask the Court to decide essentially two issues: (1) whether Count I of the hospital's claim against the estate of Gregory Moore is barred by its alleged failure to comply with Ill.Rev.Stat., ch. 110½, § 18–12, requiring that all claims against the estate be filed with the administrator or the Court; and (2) whether this federal court, sitting in Illinois in an interpleader action, should enforce the hospital's lien (which arises under District of Columbia law) against the proceeds of an Illinois wrongful death claim. The Court addresses each of these issues in turn in light of the principles applicable to the entry of summary judgment.

### I

■ The Moores' first contention is that *Count I* of Washington Hospital's claim—that the hospital has a valid lien against the estate of Gregory Moore—is barred by Illinois law which requires timely notification of a claim against an estate. Section 18–12, chap. 110½, of the Illinois Revised Statutes states that "[a]ll claims against the estate of a decedent ... not filed with *the representative or the court* within six months after the entry of the original order directing issuance of letters of office are barred as to all of the decedent's estate." Ill.Rev.Stat., ch. 110½, § 18–12 (1983 and Supp., 1984–1985) (emphasis added). Furthermore, every claim "must be filed in writing and state sufficient information to notify the representative of the nature of the claim or other relief sought." Ill.Rev. Stat., ch. 110½, § 18–2 (1983 and Supp., 1984–85). The claim, however, need not be filed with the court, but "may be filed with a representative *or* the court or both." Ill. Rev.Stat., ch. 110½, § 18–1 (1983 and Supp., 1984–85) (emphasis added).

With respect to the sufficiency of notice under the Illinois Probate Act, the following facts are undisputed:

1. The hospital submitted itemized statements of hospital charges incurred for the treatment of Gregory Moore to Roy L. Moore, the father of the decedent Gregory Moore and administrator of the estate of Gregory Moore, deceased, by mail to 704 Railroad Street, Beardstown, Illinois, the address of record for Roy L. Moore.

2. Roy L. Moore acknowledged receipt of the hospital's itemized statements by letter to the hospital dated September 18, 1982, in which Roy Moore directed the

---

to whether or not Washington Hospital is entitled to a lien for services rendered by it against either the Aetna policy of insurance or the Travelers policy of insurance are identical. Aetna, however, has not as yet paid out any funds under its policy.

hospital to send all bills for Gregory Moore to the Illinois Department of Public Aid.

3. That Roy L. Moore also acknowledged receipt of the hospital charges in a conversation with Gary Short, collection representative for the hospital.

4. In a letter dated July 6, 1982, William A. Allison, Esq., notified the hospital that he was the attorney for the estate of Gregory Moore, deceased, and requested a copy of the hospital's statement of charges incurred in the treatment of Gregory Moore.

5. On July 12, 1982, the hospital mailed a copy of the hospital's itemized statement of charges for the treatment of Gregory Moore to William A. Allison, Esq.

6. On July 17, 1982, the hospital filed a hospital lien pursuant to the laws of the District of Columbia in the amount of $237,081.60 for the charges incurred in the treatment of Gregory Moore, and perfected its lien by complying with all statutory requirements.

7. The hospital filed notice of its lien against the estate of Gregory Moore, deceased, by submitting a copy of the hospital's lien setting forth the amount of the hospital charges incurred in the treatment of Gregory Moore to William A. Allison, Esq., attorney for the estate of Gregory Moore, deceased, by certified mail delivered to him on July 1, 1982.

The evidence summarized above, which is contained in uncontested affidavits filed on behalf of Washington Hospital, clearly indicates that the administrator of the estate had sufficient notice of the nature of the hospital's claim as required by § 18–2 of the Probate Act. Under Illinois law, technical legal form is not required in the presentation of claims, and proceedings in probate court for the allowance of claims are not governed by the technical rules which apply to a formal suit at law. *Sheetz v. Morgan,* 98 Ill.App.3d 794, 54 Ill.Dec. 117, 424 N.E.2d 867 (1981); *In re Estate of Piper,* 59 Ill.App.3d 325, 327, 16 Ill.Dec. 604, 375 N.E.2d 477 (1978). Rather, all the Probate Act requires is that the claim "be in writing and state sufficient information to notify the representative of the nature of the claim or other relief sought." Ill. Rev.Stat., ch. 110½, § 18–2; *see also Hobin v. O'Donnell,* 115 Ill.App.3d 940, 71 Ill.Dec. 542, 451 N.E.2d 30 (1983).

The hospital's claim involved herein satisfies these requirements. It was set forth to the administrator in writing, and gave the estate notice of the nature of the claim. Thus, the hospital has met the requirements of § 18–2, thereby entitling its lien to consideration as a claim against the estate.[4]

*Ergo,* in light of the foregoing discussion, the Court finds that Washington Hospital is entitled to judgment in their favor on the issue of liability in *Count I* of their cross-claim against the estate of Gregory Moore.[5]

**4.** Although a claim filed with a representative and not with the Court could be disallowed by the representative pursuant to Ill.Rev.Stat., ch. 110 ½, § 18–11(b), and could then be barred under § 18–12 in the same manner as a claim not timely filed, the claim is not so barred unless the notice of disallowance is mailed to the claimant and the claimant's attorney. The notice must inform the claimant that the claim must be presented to the Court within 60 days after the claimant receives notice of disallowance from the representative. Ill.Rev.Stat., ch. 110 ½, § 18–11(b) (1983 and Supp. 1984–85). No such notice was ever received by Washington Hospital or its attorneys.

**5.** The Moores, in response to Court interrogatories, also argue that Washington Hospital should be collaterally estopped from asserting its claim against the estate. In support of their argument, the Moores recite that the state court in Cass County, Illinois, ruling on a petition of Roy Moore filed in the probate proceedings pending there, entered an order dated May 29, 1984, to the effect that Washington Hospital has no lien on the proceeds of settlement as described in that order. That order includes, in relevant part, the following language:

. THIS CAUSE comes on to be heard on the Petition filed by Roy Moore, Administrator of the Estate of Gregory S. Moore pursuant to paragraph 101 of Chapter 82 Illinois Revised Statutes 1983. This Court directed that Notice of said hearing be given by the Clerk of this Court and the proof of mailing of such notice is on file in this cause. * * * WASHINGTON HOSPITAL CENTER fails to appear. The

## II

The second issue presented by the parties is whether an out-of-state lien can be enforced against the proceeds of an Illinois wrongful death claim. The Moores, and the parties aligned with them, have expended considerable effort to convince the Court that under the appropriate conflict of law rules, an Illinois court would refuse to enforce the hospital's lien, perfected under the laws of the District of Columbia, against the proceeds of a wrongful death claim. They have argued that an Illinois court would not enforce such a lien because to do so would contravene Illinois public policy as embodied by the Illinois wrongful death statute; and, alternatively, that the District of Columbia Hospital Lien Statute was never intended to have extraterritorial effect. Resolution of these issues requires a threshold determination of the law that is applicable to the question of the enforceability of an out-of-state lien against an Illinois wrongful death claim.

As jurisdiction in this case is based upon diversity of citizenship, this Court must apply the law of the forum state, including its conflict of laws rules, to determine the rights of the parties. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Federal statutory interpleader actions, premised upon the diversity of citizenship of the claimants, are no different in this regard from actions brought under the Court's general grant of diversity jurisdiction. *Griffin v. McCoach*, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed.1481 (1941). This Court, therefore, must apply Illinois' conflict of laws rules to the facts of this case.

Illinois courts rely on the "most significant contacts" test to determine the applicable law. *Champagnie v. W.E. O'Neil Construction Co.*, 77 Ill.App.3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979); *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). This so-called "test" is really a list of relevant factors meant to illuminate which state has the most significant interest in the application of its own substantive law to the merits of the issue involved. In this regard, the Seventh Circuit has approved the concept of *"depecage"*: the process of applying rules of different states to the various issues involved in the lawsuit. *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, 611

Court further finds that Defendants, CRITIC MILLS, INC. and ROBERT EDWARDS, d/b/a EDWARDS WELDING, have offered the Petitioner $225,000.00 in settlement of this cause, and that Petitioner has accepted the same, subject to the determination by this Court of whether or not the WASHINGTON HOSPITAL CENTER is entitled to a lien on the proceeds of settlement.

The Court having considered said Petition ... finds that it has jurisdiction of the parties hereto and the subject matter of this Petition. The Court further finds that said Petition should be allowed and that the WASHINGTON HOSPITAL CENTER should be adjudged to have no lien on the proceeds of settlement proposed by the parties thereto ...

Thus, the Moores contend, Washington Hospital should not now be permitted to relitigate the issue previously decided by the state court. Under Ill.Rev.Stat., ch. 82, ¶ 97, *et seq.*, however, a petition pursuant to ¶ 101 on its face only grants a state court the authority to adjudicate liens perfected pursuant to the *Illinois* Hospital Lien Statute and no others. Thus, apparently the only issue adjudicated pursuant to the Moores' petition was whether Washington Hospital held a valid enforceable lien under the Illinois Hospital Lien Act, Ill.Rev.Stat., ch. 82, ¶ 97, *et seq.* (1983), not whether it has a valid lien under the laws of the District of Columbia. Were the issues identical, *res judicata* or collateral estoppel might arguably apply. *See Jones v. City of Alton*, 757 F.2d 878 (7th Cir.1985). Further, application of the doctrines of claim or issue preclusion require a judgment *on the merits, Housing Authority v. YMCA*, 101 Ill.2d 246, 251–52, 78 Ill.Dec. 125, 461 N.E.2d 959 (1984), which apparently was not rendered in the prior proceeding. Since the Moores have offered no case law or argument to the contrary and since Washington Hospital does not argue that it perfected a lien pursuant to the Illinois Hospital Lien Act, this Court cannot agree that Washington Hospital should be collaterally estopped from asserting its claim for medical services or that *res judicata* is applicable.

The parties have also reserved the issue of the valuation of the medical services rendered under the implied contract between Moore and the hospital. Consequently, this Court does not reach the issue of whether Washington Hospital is entitled to judgment against the estate for the full amount claimed.

(7th Cir.1981). This means that the choice of the applicable law should depend on the issue involved. As explained by the Court in *Air Crash*:

> The application of choice-of-law rules is not a mechanical process of cranking various factors through a formula. Critical to conflicts analysis is the notion that we must examine the choice-of-law rules not with regard to various states' interests in general, but precisely, with regard to each state's interest in the specific question of punitive damages. Thus, we approve the concept of "depecage": the process of applying rules of different states on the basis of the precise issue involved.

644 F.2d at 610–11.

Thus, the search is not for the state whose law will be applied to govern all the issues in the case; rather, it is for the rule of law that can most approximately be applied to govern the particular issue. *See* Reese, *Depecage: A Common Phenomenon Choice of Law,* 73 Colum.L.Rev. 58, 59–60 (1973).

Applying the concept of *depecage* is particularly useful in the context of interpleader actions where, as here, the forum state does not have the most significant relationship to all the underlying transactions and parties. Thus, although Illinois law may apply to the issue of liability vis-a-vis Moore and Edwards and Critic Mills, this Court, applying *depecage,* is free to apply the substantive law of the District of Columbia to the issue of liability vis-a-vis Moore and Washington Hospital if it is determined that the District of Columbia has the most significant relationship to that issue. The Court now proceeds to an examination of the precise issue before the Court as it relates to the conflicts of laws rules applied by Illinois courts. In this regard, this Court will utilize Restatement (2d) Conflict of Laws, § 188(1) and (2), concerning conflict of laws in contract actions, as relied upon by the Court in *Champagnie.*

Section 188(2) of the Restatement sets up the following relevant factors: (a) the place of the contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (2d), Conflicts of Law, § 188(2) (1981). In addition to these factors, section 188 directs the reader to section 6 of the Restatement for further consideration. Section 6 lists: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of results; and (g) ease in which the determination and application of the law is to be applied. Restatement (2d), Conflicts of Law, § 6 (1971).

In analyzing these factors, Illinois requires more than a mere counting of contacts to determine which state has the "most significant relationship" to the transaction. Rather, what is required is a "consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue." *Mitchell v. United Asbestos Corp., supra,* 100 Ill.App.3d 485 at 493–94, 55 Ill.Dec. 375 at 380–81, 426 N.E.2d 350 at 355–56 (*citing Johnson v. Spider Staging Corp.,* 87 Wash.2d 577, 582, 555 P.2d 997, 1001 (1976)). This approach is based on the principle that "[c]ontacts obtain significance only to the extent they relate to the policies and purposes sought to be vindicated by the conflicting laws." *Id.*

Applying § 188 of the Restatement, Factors (a) through (d) weigh in favor of the application of District of Columbia law to the question of the enforceability of the lien, since the lien arose from an implied contract that was performed in the District. Factor (e), the domicile and place of business of the parties, points to both Illinois and the District of Columbia. The issue at

this juncture is the importance of these contacts in light of the principles espoused by § 6 of the Restatement.

In analyzing the principles enunciated by this section, the parties have focused on the question of the relevant policies of the interested states, which is essentially Factors (b), (c), and (e) of § 6. The Moores contend that D.C. law should not be applied because the District of Columbia would enforce the lien against the proceeds of a wrongful death claim, which is something an Illinois court would not do.[6] Therefore, the Moores argue, the strong interest Illinois has in insuring that liens are not satisfied through the proceeds of an Illinois wrongful death claim mandates the application of Illinois law to protect this interest.

The Moores' argument is without merit because it mistakenly assumes that the District of Columbia would—in contrast to Illinois—satisfy a lien with the proceeds of a wrongful death claim.

Chapter 27 of the District of Columbia Code § 16–2701 provides, in relevant part, as follows:

§ 16–2701. *Liability; damages; prior recovery as precluding action.*

When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act ... of a person ... the damages ... *shall* include the reasonable expenses of last illness and burial.

D.C. Code, § 16–2701 (1981).

Thus, it appears that the District of Columbia, as distinguished from the State of Illinois, allows recovery for the reasonable expenses of a decedent's last illness in a

---

**6.** Illinois would not enforce any lien against the proceeds of a wrongful death claim because the Illinois Wrongful Death Act has been construed by the Illinois Supreme Court to provide only a remedy for the pecuniary loss of the decedent. It does not afford a remedy for other losses such as pain and suffering or medical and burial expenses. *Graul v. Adrian*, 32 Ill.2d 345, 205 N.E.2d 444 (1965). Ill.Rev.Stat., ch. 70, ¶ 1, provides as follows:

§ 1. Action for damages

Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

Additionally, the Illinois Wrongful Death Act provides that "the amount recovered in every [wrongful death] action shall be *for the exclusive benefit of the surviving spouse and next of kin*" of the deceased person. 70 Ill.Rev.Stat. at ¶ 2. Although the Illinois Supreme Court has not addressed the issue of whether the "exclusive benefit" clause of ¶ 2 precluded the attachment and enforcement of a foreign hospital lien against the proceeds of a wrongful death action, the Appellate Court of Illinois in *Schmidt v. Country Mutual Insurance Co.*, 79 Ill.App.3d 456, 34 Ill.Dec. 766, 398 N.E.2d 589 (1979), held that the "exclusive benefit" clause prevented an in-

surer from exercising subrogation rights against a wrongful death recovery. In *Schmidt*, the insurer had paid $6,000 on an automobile policy to the insured's widow following his death in an automobile accident. The widow then sued the other motorist for the wrongful death of her husband and recovered $100,000. The insurer sought reimbursement from the widow through subrogation for the $6,000 it had paid under the accidental death benefit and medical payment coverage of the automobile policy. In denying subrogation on the ground that the intent of the Wrongful Death Act was to make the proceeds of a wrongful death recovery exclusively for the benefit of the surviving spouse and next of kin, the Court concluded that a subrogation claim by an insurance company against the proceeds of a wrongful death action was against public policy. *See also National Bank of Bloomington v. Podgorski*, 57 Ill.App.3d 265, 14 Ill.Dec. 951, 373 N.E.2d 82 (1978).

Although the present case involves a hospital lien rather than a subrogation claim, the Court is confident that Illinois would not treat the two as distinguishable in this context. This conclusion is supported by the fact that in no event may medical expenses be awarded in a wrongful death action and that, as a general principle, creditors cannot reach the proceeds of a wrongful death action. *Greenock v. Merkel*, 71 Ill. App.3d 958, 28 Ill.Dec. 96, 390 N.E.2d 78, 79 (1979); *In re Shield's Estate*, 320 Ill.App. 522, 51 N.E.2d 816 (1943).

Under some circumstances, *e.g.*, where the decedent leaves no widow or next of kin, a hospital lien may, in part, be satisfied out of the proceeds of a wrongful death recovery. *See* Ill.Rev.Stat., ch. 70, ¶ 2. These circumstances are not applicable in this case.

suit for the wrongful death of that person. However, the applicable District of Columbia statute which governs the distribution of damages in wrongful death actions must be read in conjunction with § 16–2701. That statute provides:

§ 16–2703. *Distribution of damages.*

The damages recovered in an action pursuant to this chapter, except the amount specified by the verdict or judgment covering the reasonable expenses of last illness and burial, may not be apportioned to the payment of the debts or liabilities of the deceased person, but inure to the benefit of his or her family

. . .

D.C. Code, § 16–2703 (1981).

The import of § 16–2703 is that it allows a hospital providing last illness medical care to recover its charges only to the extent specifically provided for in the judgment or verdict, no more and no less. Thus, should the judgment or verdict provide no award for medical expenses, as would always be the case in Illinois wrongful death actions, the hospital would recover nothing from that suit.[7] On the other hand, should the decedent's estate bring a survival action for personal injury, authorized by both jurisdictions, a hospital lien would attach to the proceeds of the survival action regardless of whether or not the proceeds are earmarked for medical expenses.

In sum, District of Columbia law provides for last illness medical care recovery within its Wrongful Death Act, in addition to authorizing survivor actions against which a hospital lien might attach. *See* generally, *Rustin v. District of Columbia,* 491 A.2d 496 (D.C.App.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). Illinois law, on the other hand, provides that only pecuniary loss is recoverable in a wrongful death action but, like the District of Columbia, authorizes survivor actions against which a hospital lien might attach. *Graul v. Adrian,* 32 Ill.2d 345, 205

N.E.2d 444 (1985). To find a conflict in the policies of the two states on the mere fact that Illinois requires a two count complaint in order to recover for wrongful death and last illness medical expenses while the District of Columbia requires only one is to exhault form over substance. Given this distinction, it cannot even be concluded that the differences between the District of Columbia's Wrongful Death Act and that of Illinois' pose an actual conflict of law.

Hospital lien statutes are remedial, having been enacted for the very humane purpose of encouraging hospitals to extend their services and facilities to indigent and uninsured persons. This purpose is effectuated by the provisions of the statute which assure that hospitals are compensated for the use of their facilities and the service rendered. The legislatures of both Illinois and the District of Columbia do so by providing that when a patient's injury is paid under a judgment, compromise, or settlement agreement, the hospital is entitled to be paid first from the proceeds if the hospitals comply with the statutory requirements of the forum. While there are some differences between the Illinois and the District of Columbia hospital lien statutes, both Illinois and the District of Columbia have indicated a legislative intendment to protect the interests of certain hospitals within their boundaries that provide hospital and medical services without receiving payment. Perfection of a lien under the District of Columbia's hospital lien statute simply does not conflict with any of the policies underlying Illinois law.

■ Consequently, because the statutory framework of both states is similar and the results under each statute are precisely identical, the policy arguments raised by the parties do no more than weigh equally in favor of application of either state's law. It is this Court's view that the other factors articulated by § 188 and § 6 weigh in favor of applying D.C. law to the issue of the enforcement of the hospital's lien.

7. This is possible, even though § 16–2701 provides that last illness medical expenses *shall* be included in the judgment, in the event of failure of proof, oversight, etc.

As explained previously, the District of Columbia would not enforce its hospital lien against the proceeds of any wrongful death claim. Therefore, summary judgment in favor of the Moores is appropriate on the central issue raised by the motions: whether the hospital's lien may be enforced against the proceeds of the Moores' wrongful death claim. The Court holds that it may not, and enters partial summary judgment on this issue.[8] However, should the Moores recover medical expenses or damages in a cause of action separate from their wrongful death claim, there would apparently be no policy prohibiting enforcement of the hospital's lien against such proceeds.[9]

*Ergo,* it is ordered that the motions for summary judgment filed by the Moores and the parties aligned with them are ALLOWED to the extent Washington Hospital claims an interest in the proceeds of the Moores' wrongful death claim. The remaining motions for summary judgment are DENIED.

---

8. The Moores' attempt to avoid the foregoing conclusion by arguing that, even if choice of law principles militate for the application of District of Columbia law, the District of Columbia Hospital Lien Statute was never intended to be applied beyond the territorial boundaries of the District of Columbia. The case authorities cited by the Moores to support that proposition are inapposite, and cannot be relied upon to defeat the enforcement of the hospital's lien. In both *Butler v. Wittland,* 18 Ill.App.2d 578, 153 N.E.2d 106 (1958), and *Dur-ite Co. v. Industrial Commission,* 394 Ill. 338, 68 N.E.2d 717 (1946), the parties sought relief pursuant to Illinois statutes on causes of actions arising outside Illinois, and the cases merely held that the actions could not be brought under the Illinois statute. In contrast, Washington Hospital seeks relief pursuant to a District of Columbia statute for services provided in the District of Columbia. Thus, those cases fail to shed light on the question of whether the forum court in an interpleader action should give extraterritorial effect to another state's lien in that action.

9. Throughout this litigation, the Moores have contended that the only right they have to recover money deposited in this interpleader action comes from their cause of action for wrongful death of the decedent. However, in response to this Court's interrogatories filed June 25, 1986, First State, an insurance carrier for Critic Mills, has indicated that the Moores have brought an action against Critic Mills for personal injuries and medical expenses in addition to their cause of action for wrongful death. These claims allegedly are still pending in state court actions, which have been stayed pending determination of this interpleader action. Whether or not this fact is true is determinative of Washington Hospital's right to recover. Since there is apparent dispute over this factual matter, summary judgment against Washington Hospital on *Count II* at this time would be premature.