*In re* ESTATE OF WILLIAM W. SCOTT, JR., a Disabled Person (Sundstrand-Sauer, Petitioner-Appellee, v. Estate of William W. Scott, Jr., Respondent-Appellant).

Second District   No. 2—90—0322

Opinion filed February 8, 1991.

REINHARD, P.J., specially concurring.

Lawrence J. Ferolie and Frank A. Perrecone, both of Lawrence J. Ferolie & Associates, Ltd., of Rockford, for appellant.

Thomas H. Boswell, of Hinshaw & Culbertson, of Rockford, and D. Kendall Griffith, Stephen R. Swofford, and Bruce L. Carmen, all of Hinshaw & Culbertson, of Chicago, for appellee.

George M. Elsener, of George M. Elsener & Assosciates, of Chicago, for *amicus curiae.*

John G. Garrity, P.C., of Beckmire, Garrity & Yogt, of Freeport, guardian *ad litem.*

JUSTICE GEIGER delivered the opinion of the court:

The respondent estate (the estate) of William W. Scott, Jr. (Billy), appeals from the trial court's order awarding the claimant Sundstrand-Sauer (Sundstrand or the company) judgment on the subrogation provision of its Health and Disability Group Insurance Plan (the Plan). We affirm.

In March 1988, Billy, who was age 18, was seriously injured while riding as a passenger on a motorcycle. He was later declared a disabled adult and his estate brought suit based upon the accident. Sundstrand, Billy's father's employer, paid approximately $200,000 for Billy's injuries pursuant to the terms of the Sundstrand health plan. The Plan includes a subrogation clause which states:

> "*Subrogation, Assignment and Lien.* On payments of benefits hereunder as a result of Injury or Illness, the Fund shall be subrogated, to the extent of benefits made or to be made under This Plan, to all the rights of a Covered Individual against any person, firm or organization arising out of such Injury or Illness and the Covered Individual shall execute and deliver instruments and documents and do whatever is necessary to secure such rights to the Fund. The Covered Individual shall do nothing to prejudice such rights. Each Covered Employee hereby assigns to the Trustees of the Fund out of any amounts received or to be received by the Covered Individual as a result of Injury or Illness for which the Covered Individual has a claim against any person, firm or organization to the extent of benefits made or to be made under This Plan. In addition, the Covered Individual hereby grants a lien to the Trustees of the Fund out of any amounts received or to be received by the Covered Individual as a result of Injury or Illness for which the Covered Individual has a claim against any person, firm or organization to the extent of ben-

efits made or to be made under This Plan.''

In January 1989, the court signed an order approving the estate's settlement with the motorist who had struck Billy's motorcycle. That settlement was for the motorist's $121,000 insurance policy limit. After the payment of court-approved fees, there remained approximately $82,000 in estate assets. In February 1990, after a hearing and receipt of written arguments regarding Sundstrand's claim for subrogation, the court entered its order finding that under the Plan's subrogation clause, the company was entitled to the remainder of the estate's assets from the settlement. The estate brought this appeal.

The estate's first argument on appeal is that either Sundstrand's claim should be denied or it should be allowed only on a *pro rata* basis because Billy did not receive full compensation for his injuries. It notes that the trial court observed that Billy's damages could be worth $3 to $5 million and that the settlement did not make him whole. The argument's focus is that the subrogation award, by depleting the estate's assets, is inequitable.

Sundstrand responds to this argument by asserting that the estate, through Billy, is an intended third-party beneficiary of the Plan and that Sundstrand's clear contractual rights should not be overridden by inapplicable equitable analysis.

■ Rights to subrogation originated in equity, and they may now arise in common law, or through statute or contract. (See *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 190-92.) Medical subrogation clauses in insurance contracts are generally enforceable; furthermore, if such a clause is enforceable, it is not common-law concepts of subrogation but the contract terms that control. See *Spirek v. State Farm Mutual Automobile Insurance Co.* (1978), 65 Ill. App. 3d 440, 449.

■ In this case, it is clear that, in the fashion that Billy was named as a covered dependant under his father's health plan with Sundstrand, the parties manifested their intent to confer third-party beneficiary status upon him so that he was a direct contract beneficiary. (See *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54-55.) It is also clear that based on that coverage, Sundstrand extended some $200,000 in payments on account of Billy's accident and the resulting disability. The insurance contract that obligated Sundstrand to cover Billy's expenses also included a clear right to subrogation. It provided that the company's insurance fund would be subrogated, to the extent of benefits extended, to all amounts received by or due a covered individual because of an injury creating a claim

under the Plan. Billy's insurance settlement following the injury was for a lesser amount than the benefits already extended by Sundstrand on account of that same injury.

We find that the trial court's careful analysis was correct and that the company was entitled to the full subrogation ordered. This is not a case based in equity, but rather on contractual terms. Furthermore, courts have recognized the equity of subrogating insurers to their insureds' rights against tort-feasors who had caused an insurance claim. (See *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 190-92.) Further, we note that it is not determinative that the subrogation order depletes the estate's assets. To the extent, if any, that the estate's settlement did not accurately compensate the estate, Sundstrand is not at fault. We note, also, that, to the extent that the estate's resources are less than the claim payments made by Sundstrand, the company is also disadvantaged by the estate's small settlement.

We are not persuaded by the estate's foreign authority (see *Rimes v. State Farm Mutual Automobile Insurance Co.* (1982), 106 Wis. 2d 263, 275, 316 N.W.2d 348, 353), where the court held that an insurer may not be subrogated unless the insured has been made whole for his loss. In Illinois, also, the doctrine of subrogation will be applied or not applied, according to the dictates of equity, good conscience, and public policy considerations. (*Reich v. Tharp* (1987), 167 Ill. App. 3d 496, 501.) However, its use is encouraged in appropriate circumstances. (See *In re Estate of Schmidt* (1979), 79 Ill. App. 3d 456, 458.) We are not aware that Illinois has ever made a statement analogous to that of the *Rimes* court.

As Sundstrand points out, this case is distinct from the wrongful death cases upon which the estate partially relies. There, courts noted a public policy against subrogation in the case of wrongful death. (See *In re Estate of Schmidt* (1979), 79 Ill. App. 3d 456, 458; *National Bank v. Podgorski* (1978), 57 Ill. App. 3d 265.) In *Hardware Dealers Mutual Fire Insurance Co. v. Ross* (1970), 129 Ill. App. 2d 217, also a wrongful death case, the court found no full recovery by the injured insured and no right to subrogation by the plaintiff insurer. The absence of full recovery by the injured insured, however, was not determinative in *Ross*. There, importantly, the insurer had sought to avoid liability for the insured's claim, and only after the insured had received a third-party insurance settlement had it stipulated to its coverage.

Here, where Sundstrand's insurance contract with Billy through his father included an unambiguous applicable subrogation clause,

and where Sundstrand apparently has made all payments which it was obligated to make under that contract, we find no reason to deny subrogation. Furthermore, we find no Illinois authority to support the estate's alternative argument that Sundstrand should receive only a *pro rata* share of settlement proceeds.

■ The estate also argues that Sundstrand's subrogation interest amounts to an assignment of a personal tort, which is void as against public policy. According to the estate, the enforcement of the subrogation to Sundstrand, when Billy had not been made whole by the settlement, would operate as an assignment of all Billy's rights. As a consequence, Billy would not be compensated for his injuries, disability, pain and suffering, and lost earnings.

We agree with Sundstrand that the estate has improperly characterized the subrogation claim as an "assignment." Sundstrand neither sought nor received Billy's rights to make full claims for his injury. Rather, it merely sought and was awarded the right to recoup payments advanced to the estate which had been recovered from a third-party source. (See *Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132, 144.) Contrary to the estate's assertion, the language of the Plan's subrogation provision does not call for the full assignment of the insured's rights but, rather, mere reimbursement of amounts forwarded by the Plan.

■ The estate's concluding argument is that allowance of Sundstrand's claim would violate article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art. I, §12), or be a denial of due process under the United States Constitution. Article I, section 12, provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person ***. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, §12.

We agree with Sundstrand's response that there is no merit to this argument. Sundstrand was awarded subrogation only after a full hearing in which the estate fully participated. We find no basis for a due process claim. (See *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893.) Also, we reiterate that, to the extent that Billy was not fully compensated for damages beyond his medical expenses, that is a result of the limited settlement to which the estate agreed; Sundstrand, which has a valid claim to recovery of its insurance expenses in Billy's behalf, is not responsible for that agreement.

Based upon our conclusions above, we need not consider Sundstrand's argument that ERISA (Federal Employee Retirement In-

come Security Act) provisions preempt any Illinois limitations upon Sundstrand's right to subrogation.

Accordingly, we affirm the judgment of the circuit court of Stephenson County.

Affirmed.

McLAREN, J., concurs.

PRESIDING JUSTICE REINHARD, specially concurring:

I would affirm the trial court, but I do not agree with the entire analysis of the majority opinion.

In its principal contention the estate asks us, under principles of equity and public policy, to either deny or restrict Sundstrand's contractual right to recoup up to the full amount of its medical expense payments from the settlement. Sundstrand responds that the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (1988) preempts State judicial or statutory limitations on subrogation provisions in self-insured employee benefit plans. Although the estate acknowledges that there is authority for Sundstrand's position (see, *e.g., Reilly v. Blue Cross & Blue Shield United* (7th Cir. 1988), 846 F.2d 416), the estate asks us to rely on contrary authority (see, *e.g., FMC Corp. v. Holliday* (3d Cir. 1989), 885 F.2d 79).

The Supreme Court recently addressed these conflicting decisions on this issue and ruled that States may not restrict contractual subrogation provisions contained in self-insured employee benefit plans. (*FMC Corp. v. Holliday* (1990), 498 U.S. ___, 112 L. Ed. 2d 356, 111 S. Ct. 403.) The estate concedes in its reply brief that, if ERISA's preemption provisions are applied, "then all state laws including Illinois common law of subrogation and equity are preempted." Thus, the Supreme Court's decision in *Holliday* preempts judicial modification of the contractual subrogation provision. The majority's analysis of the validity of the subrogation provision under Illinois law is unnecessary, and I do not partake in it. I concur in the balance of the majority opinion regarding the other issues raised.